# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| SUZANNE M. FORD | § | |
| | § | |
| vs. | § | CASE NO. 2:10-CV-63-TJW-CE |
| | § | |
| VERTIS, INC., ET AL. | § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

Pending before the court is defendant Vertis, Inc.'s ("Vertis") motion to transfer venue (Dkt. No. 9). Vertis contends that the Lufkin Division of the Eastern District of Texas is a more convenient forum than the Marshall Division of the Eastern District of Texas and, thus, seeks to transfer venue pursuant to 28 U.S.C. § 1404(a). The court, having considered the arguments of both parties, GRANTS Vertis's motion to transfer venue because the balance of the "private" and "public" *forum non conveniens* factors demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiffs. *See In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

**II.    FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff Suzanne Ford is a former employee of American Color Graphics ("ACG"), a subsidiary of Vertis. Ms. Ford filed suit against Vertis, alleging that ACG discriminated against her based on age and gender. Ms. Ford is a resident of Lufkin, Texas, and her former place of employment is also located in Lufkin. Vertis has filed a motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and requests that this case be transferred to the Lufkin Division (Dkt. No. 9). According to Vertis, the Fifth Circuit's *Volkswagen* venue transfer factors weigh in favor of a

1

transfer because the allegedly discriminatory acts occurred in the Lufkin Division and the parties, many of the witnesses, and the bulk of the evidence are located in the Lufkin Division.

## III. LEGAL STANDARD

Change of venue is governed by 28 U.S.C § 1404(a). Under § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Volkswagen II*, 545 F.3d at 315.

The threshold question in applying the provisions of § 1404(a) is whether the suit could have been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the court must weigh the relative conveniences of the current district against the transferee district. *Id.* In making the convenience determination, the Fifth Circuit considers several "private" and "public" interest factors, none of which are given dispositive weight. *Id.* The "private" interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. The "public" interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern

the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Id.*

IV.     ANALYSIS

The court concludes that, based upon the factors analyzed below, transfer is appropriate. All of the factors either weigh in favor of transfer or are neutral, and therefore, Vertis has met its burden of showing that a transfer to the Lufkin Division would clearly be in the interest of justice and for the convenience of the parties.

    A.     **Proper Venue**

The parties do not dispute that venue is proper in the Eastern District of Texas and therefore, venue is proper in all divisions within the Eastern District, including the Lufkin Division.

    B.     **Private Interest Factors**

        1.     *Cost of Attendance for Willing Witnesses*

The court must consider the convenience of both the party and nonparty witnesses. *See Volkswagen I*, 371 F.3d at 204. (requiring courts to "contemplate consideration of the parties and witnesses"); *Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765-66 (E.D. Tex. 2009). The court will first access the convenience of parties involved. Ms. Ford resides only 4.9 miles from the Lufkin courthouse, but she would have to travel a distance of 99.5 miles to get to the Marshall courthouse. Ms. Ford, however, filed suit in the Marshall Division despite the fact that she resides in the Lufkin Division. Vertis's Lufkin facility is only 3.2 miles from the Lufkin courthouse, but 97.8 miles from the Marshall courthouse.

Next, the court will consider the convenience of possible witnesses. The Fifth Circuit has explained that "when the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be travelled." *Volkswagen I*, 371 F.3d at 204-05. The court reasoned that "[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

In *Grimes v. Lufkin Indus., Inc.*, No. 2:09-CV-307-TJW, 2009 WL 5062053 (E.D. Tex. Dec. 16, 2009), this court was similarly confronted with a motion to transfer venue from the Marshall Division to the Lufkin Division. In analyzing the convenience of possible witnesses factor, the court noted "that Lufkin, Texas is only 95.8 miles away from Marshall, Texas." *Id.* at 2. The court then found that this factor only "slightly" favored transfer. *Id.* In *Grimes*, however, the defendant failed to "identif[y] any specific key witnesses," and relied solely upon a conclusory allegation that any co-workers of the plaintiff or potential nonparty witnesses would "reside in or near the Lufkin Division." Thus, the court was given nothing to analyze other than the distance between the cities of Lufkin and Marshall. *Id.* Further, in Grimes, the court had to assume that "[a]ll witnesses reside in the Eastern District of Texas." *Id.*

Here, Vertis has specifically identified key witnesses, three of whom – Jimmy Aguilar, Randy Brown, and Greg Walley – live outside the Eastern District of Texas and closer to Lufkin than to Marshall. Further, several of the witnesses residing in the Eastern District of Texas reside south of Lufkin, and more than 100 miles from Marshall. The one witness who lives

4

closer to Marshall than to Lufkin—Leigh Peery—still lives outside the Marshall Division, and presently works at the Lufkin facility, thus traveling to Lufkin on an almost daily basis. The following chart summarizes the location of the possible witnesses Vertis identifies as having relevant information:[1]

| Name | District | Division | City | Miles to Marshall | Miles to Lufkin |
|---|---|---|---|---|---|
| Leigh Peery | E.D. Tex. | Tyler | Douglas | 47 | 90 |
| Rusty Hopkins | E.D. Tex. | Lufkin | Diboll | 113 | 11 |
| Mike Terrell | E.D. Tex. | Lufkin | Diboll | 113 | 11 |
| Eddie Weaver | W.D. Tex. | Lufkin | Huntington | 108 | 10 |
| Greg Walley | W.D. Tex. | San Antonio | New Braunfels | 337 | 294 |
| Jimmy Aguilar | W.D. Tex. | San Antonio | San Antonio | 368 | 316 |
| Randy Brown | W.D. Tex. | San Antonio | San Antonio | 368 | 316 |

As discussed above, in *Grimes*, this court held that the cost of attendance for willing witnesses factor weighed slightly in favor of transfer to the Lufkin Division because the vast majority of the witnesses resided in the Lufkin Division. *Grimes*, 2009 WL 5062053, at * 2. In this case, at least three witnesses reside in the Lufkin Division and all three must travel an extra 100 miles to get to the Marshall courthouse, as opposed to the Lufkin courthouse. Further, unlike in *Grimes*, the court has been presented with uncontroverted evidence that at least three potential witnesses reside south of the Lufkin Division and must travel an extra 40-50 miles to get to the Marshall courthouse, as opposed to the Lufkin courthouse. Under the facts in this case, the court concludes that this factor weighs in favor of transfer to the Lufkin Division.

---

[1] Although Ms. Ford argues in her response brief that Vertis failed to identify the relevant evidence that these witnesses will supply, Ms. Ford did not continue to advance this argument in her surreply. The court notes, however, that Vertis did explain each witnesses' relevance to this

## 2. *Relative Ease of Access to Sources of Proof*

The relative ease of access to sources of proof is the next "private" interest factor to consider. In *Volkswagen II*, the Fifth Circuit confirmed that advances in copying technology and information storage have not rendered superfluous the factor analyzing the relative ease of access to sources of proof. *Volkswagen II*, 545 F.3d at 316. Vertis argues that the documents pertaining to Ms. Ford's employment are maintained at Vertis's Lufkin facility. Furthermore, as discussed above, Vertis contends that the Lufkin Division is more convenient for potential witnesses and the parties. Ms. Ford does not dispute that most of the relevant sources of proof in this case are located at Vertis's Lufkin facility.

With regard to the ease of access to sources of proof factor, the *Grimes* court concluded that the factor slightly favored transfer. The court explained that although most of the sources of proof and documents were located in the Lufkin Division, Lufkin is only 95.8 miles away from the Marshall Division. Furthermore, the court noted that both the Lufkin Division and the Marshall Division are located in the Eastern District of Texas. Just as in *Grimes*, the pertinent documents in this case are also located in Lufkin. The court, therefore, concludes that this factor slightly weighs in favor of transfer to the Lufkin Division.

## 3. *Availability of Compulsory Process*

The next "private" interest factor is the availability of compulsory process to secure the attendance of nonparty witnesses. "Federal Rule of Civil Procedure 45(b)(2) governs the places where a subpoena issued by a court of the United States may be served. However, a court's subpoena power is subject to Rule 45(c)(3)(A)(ii), which protects nonparty witnesses who work

---

case in both its opening brief and reply brief. *See* Dkt. No. 9 at 2-3; Dkt. No. 12 at 3-4.

or reside more than 100 miles from the courthouse." *Grimes*, 2009 WL 5062053 at *2. Specifically, this rule requires a court to quash or modify a deposition subpoena purporting to require a nonparty witness to travel more than 100 miles and permits a court to quash or modify a trial subpoena purporting to require a nonparty witness to travel such a distance. FED. R. CIV. P. 45(c)(3)(A)(ii), (B)(iii). With respect to trial subpoenas, the fact "that a district court can deny any motions to quash does not address concerns regarding the convenience of parties and witnesses." *Volkswagen II*, 545 F.3d at 316.

In *Grimes*, the court noted that "[t]he parties have not identified any third party witnesses over which the Lufkin Division would have subpoena power as compared to the Marshall Division. Therefore, the court finds this factor neutral as to transfer." *Grimes*, 2009 WL 5062053 at *2. Vertis contends that this case is different because subpoenas issued to at least two nonparty witnesses (Mr. Hopkins and Mr. Weaver) would be subject to motions to quash if issued out of the Marshall Division, but not if issued out of the Lufkin Division. Ms. Ford does not dispute Vertis's contention that Mr. Hopkins, a former HR Manager at ACG, is believed to have been present during a conversation between the alleged bad actor in this case (Greg Walley) and Ms. Ford regarding the Paper Manager position that is at issue in this lawsuit. Furthermore, Ms. Ford does not deny that, in her EEOC Intake Questionnaire, she identified Mr. Weaver as one of only two "witnesses to the alleged discriminatory incidents." Considering this, Vertis argues that both Mr. Hopkins and Mr. Weaver are likely to be key witnesses in this case, and therefore, the availability of compulsory process factor weighs strongly in favor of transfer.

In response, Ms. Ford argues that although Mr. Hopkins and Mr. Weaver reside over 100 miles from the Marshall courthouse, there is no evidence that they do not work or conduct regular business within 100 miles of the Marshall courthouse and are, therefore, not subject to the mandatory quashing provision of Rule 43(c)(3)(A)(ii). Ms. Ford contends that it can be assumed that both witnesses work or regularly conduct business transactions within 100 miles of the Marshall courthouse because they reside only a few miles outside of the 100 miles radius. This argument might be plausible if both witnesses were still employed by ACG, which is located within Lufkin, Texas, and is only 95.8 miles from Marshall. However, that is not the case, and therefore, the court rejects Ms. Ford's assumption that it would have absolute subpoena power over these witnesses.

Considering that the court would most likely not have absolute subpoena power over two relevant witnesses, but the Lufkin Division would, the court concludes that this factor weighs in favor of transfer to the Lufkin Division.

    *4.  Other Practical Problems*

The parties have not identified any practical problems that would deter transfer to the Lufkin Division. As such, this factor is neutral.

 **C.  Public Interest Factors**

    *1.  Local Interest*

The court must consider local interest in the litigation, because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," are disregarded in favor of particularized

8

local interests. *Volkswagen II*, 545 F.3d at 318. "Transfer is appropriate where none of the operative facts occurred in the division and where the division had no particular local interest in the outcome of the case." *Grimes*, 2009 WL 5062053 at *3 (citing *Volkswagen II*, 545 F.3d at 318). Whether the plaintiff resides in the division in which the case is filed is an appropriate consideration in determining whether that division has a local interest in the outcome of the case. *Volkswagen II*, 545 F.3d at 318.

In *Grimes*, the court concluded that, "[w]hile there might be more 'local' interest in the Lufkin Division rather than the Marshall Division, all of the underlying actions in this case occurred in the Eastern District of Texas. Therefore, the Court finds that this factor is neutral as to transfer." *Grimes*, 2009 WL 5062053 at *3. Vertis argues that this conclusion reads the local interest factor out of the § 1404(a) analysis in all cases in which a party seeks an intra-district transfer. Assuming the factor remains viable, however, Vertis argues that the Lufkin Division's local interest in deciding the outcome of Plaintiff's claims favors transfer for the following reasons: (1) Ms. Ford lives and worked in the Lufkin Division; (2) Ms. Ford's former employer, ACG, is one of the largest employers in Lufkin; (3) several of the anticipated witnesses live in or around Lufkin; and (4) all of the conduct complained of in this lawsuit occurred in Lufkin.

After considering the relevant factors, given that some witnesses reside outside the Lufkin Division, and the fairly close proximity of this division to the Lufkin Division, the court finds this factor to be neutral.

*2. Court Congestion*

In its § 1404(a) analysis, the court may consider how quickly a case will come to trial and be resolved. However, Vertis does not contend that transfer of the case to the Lufkin Division would increase the time to trial. As such, this factor is neutral.

*3. Familiarity with the Governing Law*

One of the "public" interest factors is "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. Both the Marshall Division and the Lufkin Division are familiar with the applicable law, and thus this factor is neutral. *See In re TS Tech*, 551 F.3d at 1320-21.

*4. Avoidance of Conflict of Laws*

No conflict of laws issues are expected in this case, so this factor does not apply.

**V. CONCLUSION**

Considering all of the "private" and "public" interest factors, Vertis has met its burden to show that the Lufkin Division of the Eastern District of Texas is "clearly more convenient" than the Marshall Division of the Eastern District of Texas. All of the factors either weigh in favor of transfer or are neutral. As such, Vertis's motion to transfer venue is GRANTED.

SIGNED this 30th day of March, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE